CRUMP *et al. v.* CRUMP *et al.*

ATKINSON, J. Under the facts alleged in the petition and the amendments allowed, the court did not err in sustaining a general demurrer; nor did the court err in refusing the amendment which was rejected

*Judgment affirmed. All the Justices. concur.*

No. 2444. JANUARY 13, 1922.

Equitable petition. Before Judge Hodges. Franklin superior court. January 19, 1921.

Martha Crump and Susie Crump instituted an action against J. W. Crump and J. C. Crump and John W. Wansley, sheriff. The original petition as amended alleged the following, in substance: Martha Crump was the mother of her coplaintiff, Susie Crump, and of the defendant J. W. Crump. In 1903 the plaintiffs and J. W. Crump purchased from J. R. Hall a tract of land containing 231 acres, more or less, for $2500. At the time of the purchase it was agreed in parol that J. W. Crump should give his individual notes for the purchase-price of the land and take a bond for title in his own name, and the plaintiffs should pay one half of the purchase-price; and when the land should be fully paid for, J. W. Crump would execute to the plaintiffs a deed to one half of the land. On January 25, 1911, when there was a balance of $1500 due on the land, plaintiffs and J. W. Crump decided to take a loan for that amount from a loan company, to pay off the debt. By mutual agreement between the parties a loan for the sum stated was negotiated by J. W. Crump, who executed his individual note and security deed to the lender, and received a bond for title in his own name. The money so obtained was applied to the payment of the balance of the purchase-price, and a deed was executed by Hall to J. W. Crump individually. In 1906 the plaintiffs and J. W. Crump purchased another tract of land from Hall, containing 100 acres, more or less, for $6000. With reference to this purchase there was a parol agreement between plaintiffs and J. W. Crump, in all respects similar to that already stated as applying to the former transaction. On September 18, 1911, when there was a balance of $1100 due on the purchase-price, plaintiffs and J. W. Crump decided to make another loan for the purpose of paying such balance due and obtaining a deed from Hall. A loan of $2500 was negotiated by J. W. Crump with the same loan company, and by agreement between plaintiffs and J. W. Crump the latter executed his in-

dividual note and security deed to the lender, and received a bond for title from the loan company in his individual name, and obtained the amount of the loan, from which he paid $1100, the balance due to Hall, and used the remaining $1400 in the construction of a dwelling on the portion of the 100-acre tract above mentioned, to be occupied by himself as a residence. After making such loans plaintiffs and J. W. Crump agreed that they would sell the 231-acre tract, and, finding several purchasers therefor, sold it in separate tracts for sums aggregating $3500. The several transactions were had and made in the name of J. W. Crump. The purchasers assumed the outstanding debt of $1500 owed to the loan company, and paid $2000 cash. It was agreed between the plaintiffs and J. W. Crump that from the cash so received he would discharge the balance due on the loan outstanding against the 100-acre tract; but he did not do so, and on the contrary he applied it all to his own use, and negotiated with the loan company for an extension of the loan. From the time of the purchase of the 231-acre tract in 1903 until 1917, J. W. Crump and plaintiffs bought horses and mules for their joint uses, " said horses and mules being bought by the said J. W. Crump and paid for with the proceeds of said farm," and within the last three years they owned at one time eight head of horses and mules worth in the aggregate $1500, one half of which was paid by plaintiffs, all of which horses and mules have either been sold by J. W. Crump or kept for his own use. At the time the aforementioned contracts were made J. W. Crump was unmarried, and until about January 1, 1914, he made his home with petitioners " under said agreement, where he paid no board and had his lodging and laundry free from any and all cost to him, . . of a yearly value of $120.00." Since the year 1906 petitioners have lived on the 100-acre farm, " working on said farm; and that outside of clothing and feeding themselves and family, tuition for the younger children in school, and the provisions consumed by them for their personal use, the remainder has gone into the purchase-price of said land, stock, and farming tools. . . The proceeds of said labor has been $800.00, and the same has been used and expended by the said J. W. Crump in addition to the yearly rental of [the 231-acre tract], which is worth $200.00 annually, and which the said J. W. Crump received from the year 1904 to the year 1913, inclusive; so that petitioners allege that they have

turned over to the said J. W. Crump and he has received from the proceeds of said two farms the sum of $1000.00 annually for the past ten years, with which to pay for said land and to pay other obligations incurred in connection with the business interest of petitioners and the said J. W. Crump. . . There was a full and complete settlement between themselves and the said J. W. Crump in September, 1914, with reference to the lands owned by them, and that a division of said lands as hereinbefore alleged was made, and petitioners remained in possession of said described 46 acres under said settlement and division as their property." At the March term, 1920, of Franklin superior court, " pursuant to a compromise, a verdict was taken, and a decree . . directed the clerk of the superior court of said county to issue a writ of possession against J. C. Crump and in favor of J. W. Crump, and that said compromise was a means by which said J. W. Crump was endeavoring and conspiring with J. C. Crump to defraud said petitioners out of their interest in said tract of land, and that attorneys for said J. W. Crump expressed their intention of ousting not only J. C. Crump but your petitioners also, and that said move was a conspiracy by and between J. W. Crump and J. C. Crump to unlawfully deprive petitioners of possession of said land." While proceedings were pending between J. C. Crump and J. W. Crump, " the said J. W. Crump, by means of distress warrants and injunctions, had all the rents, issues, and profits withheld from petitioners for the years 1916, 1917, 1918, and 1919, . . [and] they were denied the benefit of any of said rents, and the same was used and applied to the use of J. C. and J. W. Crump under [and] by reason of a pretended compromise." Petitioners " have given bond in the sum of $1500 annually for rents of said lands for the year 1920, payable to J. W. Crump, in the event he recovers in said suit." Such rents are " of the value of $1500." J. W. Crump has made certain deeds " describing the lands in dispute, attempting to convey same to different parties. That said deeds is a cloud on petitioners' titles." The prayers were: (a) that the sheriff and J. W. Crump, his agents, attorneys, and employees be restrained and enjoined from interfering with petitioners' enjoyment and use of the property. (b) That J. W. Crump be required to execute to them a deed to the 46 acres for which plaintiffs were suing. (c) That " all incumbrances be delivered in court and canceled," etc. (d) For cancellation of

certain deeds as clouds upon plaintiffs' title. (*e*) For general relief.

The court rejected an amendment which alleged: "That in pursuance of the agreement and division of said 100 acres of land, plaintiffs entered into exclusive possession of the western half of the 100 acres, which consists of 46 acres, more or less, and more fully described in last half of paragraph two amended petition; and that their possession was and is evidenced by the exercise of absolute control and dominion over said premises, to the exclusion of the defendants and all other persons whatsoever, and to the extent of those claiming under pretended deeds from defendants. That from the time of said division plaintiffs' possession has been adverse to defendants, plaintiffs and defendants both recognizing the dividing lines as run and made and established, as more fully set out in the amended answer, by the county surveyor, J. H. Whitworth, plaintiffs relinquishing any claim or right they had in the other half of said land, which consists of 54 acres, more or less, and defendants relinquishing any claim or right they may have had in the said 46 acres known as the western half on which plaintiffs reside. That since said division plaintiffs and defendants both have recognized and observed the lines as established by said county surveyor in making the division, and their possession has extended to the lines as alleged were established, and each to the exclusion of the. other from the respective premises, by only controlling or attempting to control up to said lines. That defendants recognized the division and lines then established, and have not exercised any control over the said 46 acres, but only over the 54 acres, and recognizing the lines as established at the instance of the defendants."

The defendants demurred to the petition as amended, on the ground that it failed to set forth a cause of action, and that the allegations of the petition amounted to an attempt to set up an express trust by parol. The judge sustained the demurrer and dismissed the petition. Error was assigned upon this judgment, and upon the judgment refusing to allow the proposed amendment.

*Robert T. Camp* and *A. S. Skelton,* for plaintiffs.

*J. H. & Emmett Skelton, George L. Goode, W. R. Little,* and *Richard B. Russell,* for defendants.